Thomas **BIELICKI** and Jacqueline Bielicki, his wife, Plaintiffs,

v.

**EMPIRE STEVEDORING COMPANY, LTD.**, Defendant.

Civ. No. 4–88–431.

United States District Court, D. Minnesota, Fourth Division.

July 9, 1990.

Harvey L. Anderson, Fine and Staud, Philadelphia, Pa., and David L. Sasseville, Lindquist & Vennum, Minneapolis, Minn., for plaintiffs.

George W. Soule, Robert K. Miller, Bowman and Brooke, Minneapolis, Minn., for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction. Plaintiffs oppose defendant's motion and, in the alternative, request that if the court grants defendant's motion that they be permitted to amend their complaint to allege an alternative basis for jurisdiction. For the reasons stated below, both defendant's and plaintiffs' motions will be granted.

## FACTUAL BACKGROUND

Plaintiffs bring this personal injury action against defendant for the second time. The District Court for the Eastern District of Pennsylvania dismissed this action for lack of personal jurisdiction on October 22, 1989. Plaintiffs are residents of Pennsylvania. Defendant, Empire Stevedoring Company, Ltd. (Empire Canada) is a privately held corporation duly formed under the laws of Canada with its principal place of business in Montreal, Quebec. Defendant's wholly owned subsidiary, Empire Stevedoring, Inc. (Empire Duluth) is a Minnesota corporation with its principal place of business in Duluth, Minnesota. The incident giving rise to this action occurred aboard the M/V MALAKAND on May 24, 1985, while it was docked at Northern Shipping Company in Philadelphia, Pennsylvania.

Plaintiffs assert that the defendant is present in Minnesota and transacts business here through the instrumentality of a shell corporation in Duluth. Defendant contends that it is not present here, that Empire Duluth is a wholly separate subsidiary, and that accordingly this court does not have jurisdiction over it. Defendant further contends that even if it is present here, this court has no jurisdiction over it because the accident in question is unrelated to its presence here.

Since Empire Duluth's incorporation, Empire Canada has been its sole owner. (Harris Depo. at 32). The Chodos Family of Canada owns Empire Canada. (Kane Depo. at 6). Theodore Chodos, president of Empire Canada, and Manny Gordon, comptroller of Empire Canada, are on the board of directors of Empire Duluth. (Harris Depo. at 66). Although board members, neither ever visits Duluth.

Empire Duluth filed its Articles of Incorporation with the Minnesota Secretary of State on April 22, 1969. Other than these initial incorporation documents, no corporate records of Empire Duluth exist. (Harris Depo. at 35). There is no evidence that defendant made any capital investment in Empire Duluth upon incorporation. *See id.* at 34. Because of this, plaintiffs contend that Empire Duluth is and always has been under-capitalized. As a business operation, Empire Duluth has lost money over the past five or six years and has never paid dividends. (Harris Depo. at 31).

Empire Duluth is in the business of loading lake and ocean going vessels with bulk grain. The operation consists of Peter Harris, president, and a handful of full-time employees who run the office. Longshoremen, to aid with loading, are hired on an as needed basis. (Harris Depo. at 82). Empire Canada is a stevedoring operation that handles various cargos.

Between 30 to 50 percent of the loading done by Empire Duluth is arranged and invoiced by defendant. (Harris Depo. 45–46, 107). All dealings relating to these jobs are handled solely by Empire Canada and Empire Canada collects all revenues. (Harris Depo at 44–46, 106–108). Furthermore, upon request, Empire Canada provides its subsidiary, Empire Duluth, with monies to meet its payroll as well as other expenditures. (Harris Depo. at 30, 43). During some periods, Empire Duluth requests funds from Empire Canada as often as once per week. *Id.* at 43.

There is no evidence that Empire Duluth commingles assets with Empire Canada. The two corporations maintain separate bank accounts and file separate tax returns. (Harris Depo. at 72–3).

Plaintiff further contends that Empire Canada holds Empire Duluth out as an arm of Empire Canada's overall stevedoring operation. In its marketing materials Empire Canada claims that it serves the Great Lakes. (Harris Depo. Exhibit 7). Also, on loading forms, Empire Canada lists Duluth as a "Branch Office." (Harris Depo., Exhibit 6).

## DISCUSSION

 Plaintiffs seek to invoke this court's jurisdiction under 28 U.S.C. § 1332 (1982). In a diversity case, the court must apply the law of the forum state to determine the persons over whom it may assert jurisdiction. Fed.R.Civ.P. (4)(e), (f); *see Lakota Girl Scout Council, Inc. v. Havy Fundraising Management Inc.*, 519 F.2d 634, 637 (8th Cir.1975). The court must determine whether the facts presented satisfy the forum state's long arm statute and whether the non-resident has "minimum contacts" with the forum state so that the court's exercise of jurisdiction would be fair and in accordance with due process. *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir.1988). The pleadings and affidavits must be viewed in the light most favorable to the non-moving party. *Id.* The applicable Minnesota statute, Minn.Stat. § 543.19 (1988), provides that a foreign corporation is amenable to suit in Minnesota if, in person or through an agent, it transacts any business within the

state and plaintiffs' cause of action arises from this business activity.[1]

### A. *Piercing the Corporate Veil*

█ A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. *Cannon Mfg. Co. v. Cudahy Packing*, 267 U.S. 333, 336, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). Long arm derivative jurisdiction has been found, however, where the parent so controlled and dominated the activities of its resident subsidiary that the latter's separate corporate existence was in effect disregarded. *Lakota Girl Scout Council, Inc.*, 519 F.2d at 637; *see also Scott v. Mego Int'l, Inc.*, 519 F.Supp. 1118, 1125–26 (D.Minn.1981) (non-resident parent corporation may subject itself to jurisdiction by its subsidiary's activities in that state if the companies are operated so that one corporation is an instrumentality or adjunct of the other corporation).

█ No all-embracing rule has been established under which the relationship between the two corporations can be determined. Instead, the determination must be made after examining the circumstances in each case. *Fisher v. First Nat'l Bank*, 338 F.Supp. 525, 529 (S.D.Iowa), *appeal dismissed*, 466 F.2d 511 (8th Cir.1977) (cited in *Lakota Girl Scout Council*, 519 F.2d at 637). Factors to consider include:

(1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;

---

1. The applicable provisions of the Minnesota long arm statute provide:

Subd. 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual or a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:

(a) owns, uses or possesses any real or personal property situated in this state, or

(b) transacts any business within this state, or

(c) commits any act in Minnesota causing injury or property damage, or

(d) commits any acts outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when non jurisdiction shall be found:

1. Minnesota has no substantial interest in providing a forum; or

2. The burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

3. The cause of action lies in defamation or privacy.

Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section.

Minn.Stat. § 543.19 (1988).

(2) Whether the parent and subsidiary corporations have common directors and officers;

(3) Whether the parent corporation finances the subsidiary;

(4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5) Whether the subsidiary has grossly inadequate capital;

(6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;

(7) Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

(9) Whether the parent corporation uses the property of the subsidiary as its own;

(10) Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

(11) Whether the formal legal requirements of the subsidiary are not observed.

*United States v. Advance Machine Co.,* 547 F.Supp. 1085, 1093 (D.Minn.1982).

In *Lakota Girl Scout Council,* 519 F.2d 634 (8th Cir.1975), the Eighth Circuit found that sufficient evidence existed to pierce the corporate veil of a fundraising company in order to exercise personal jurisdiction over the company's chief executive officer. The court relied on the facts that the officer was the sole shareholder and incorporator of the corporation, that the officer gave loans to and borrowed from the corporation, that the corporation was undercapitalized, and that the officer owned and used property belonging to the corporation. *Id.* at 638.

In *Scott v. Mego International, Inc.,* 519 F.Supp. 1118 (D.Minn.1981), the court exercised jurisdiction over a foreign parent corporation, Mego International, by piercing the corporate veil of its subsidiary, Mego Corp. The two corporations had a number of common directors and officers, maintained offices at the same location, and had consolidated financial statements. Mego International funded the pension plan of Mego Corp. and guaranteed its credit. The court further found that Mego International held itself out to the public as having substantial control over the subsidiary. *Id.* at 1126.

In the instant case, viewing the evidence in the light most favorable to plaintiffs, plaintiffs have set forth sufficient evidence for this court to disregard the corporate identity of Empire Duluth and find that Empire Canada, through its alleged subsidiary Empire Duluth, is in fact transacting business in this state.[2] Most of the factors which the court must consider support such a finding. Similar to the alleged subsidiary in *Scott,* Empire Duluth is a wholly owned subsidiary and its directors are also directors of Empire Canada. Empire Canada contributes to the operation of Empire Duluth by paying its salaries and other expenditures when requested, a factor considered important in both *Scott* and *Lakota.* Empire Canada collects the revenues for and arranges 30 to 50 percent of Empire Duluth's total business. Empire Canada apparently made no contribution of capital to its subsidiary and Empire Duluth is undercapitalized. Empire Duluth has lost money for the last five or six years and has not issued any dividends. The subsidiary has also disregarded the formal, legal requirements by not

---

**2.** When a defendant challenges jurisdiction, the burden is on the plaintiff to make out a prima facie case of jurisdiction. Once the plaintiff makes a prima facie showing, the burden shifts to the moving party to demonstrate a lack of jurisdiction. *Larson v. Association of Apartment Owners of Lahaina Shores,* 606 F.Supp. 579, 582 (D.Minn.1985).

keeping corporate records. Finally, similar to the parent corporation in *Scott*, Empire Canada holds itself out as having control over its subsidiary by representing to the public that it serves the Great Lakes and lists Duluth as a "Branch Office."

Factors weighing against piercing the corporate veil include the fact that the two corporations maintain separate bank accounts, file separate tax returns and do not commingle assets. Although probative, the factors do not have sufficient weight to tip the scale against piercing the corporate veil.

The parent-subsidiary relationship appears to be a convenient means for Empire Canada to organize and manage its stevedoring operations in the Great Lakes. Since the court finds Empire Duluth to be a mere instrumentality of Empire Canada, the court concludes that Empire Canada is transacting business within this state within the meaning of Minn.Stat. § 543.19(1)(b) (1988).

### B. *Due Process*

■ Defendant contends that even if it does transact business within the state, it does not have sufficient contacts with the forum in order for the court in accordance with its due process rights to exercise personal jurisdiction over it. When determining the sufficiency of contacts needed to satisfy due process requirements, this court must evaluate (1) the quantity of contacts with the forum state; (2) the nature and quality of contacts; (3) the source and connection of the cause of action with these contacts; (4) the interest of the state providing a forum; and (5) the convenience of the parties. *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965); *Vikse v. Flaby*, 316 N.W.2d 276, 282 (Minn. 1982). The first three factors are the most important, the last two of lesser importance. *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn.1983).

■ The quantity, nature and quality of defendant's contacts with Minnesota are sufficiently substantial to make it fair, reasonable and in accordance with due process

to exercise personal jurisdiction over Empire Canada. Empire Canada, through its instrumentality Empire Duluth, has enjoyed continuous corporate activities in Minnesota. Since 1967, Empire Duluth has actively engaged in the loading of bulk grain in Duluth. Empire Duluth has hired employees, paid taxes and maintained a consistent presence in the state. *See Franklin Mfg. Co. v. Union Pacific Railroad*, 297 Minn. 181, 183, 210 N.W.2d 227, 229 (1973) (substantial contact found where corporation, although not authorized to do business in state, maintained an office in state for the purposes of soliciting freight shipments); *see generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1069 (1987). Empire Canada represents in its literature that Empire Duluth is well established as doing business in Minnesota.

Any inconvenience caused to defendant by this court's exercise of jurisdiction is outweighed by the fact that the defendant, when establishing an instrumentality in Minnesota, purposefully availed itself of the privilege of conducting business in the state and, as such, had expectations to be haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (a defendant can reasonably anticipate out of state litigation if he purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws).

### C. *Subdivision 3 Limitation*

■ Having found that the defendant has the requisite "minimum contacts" with Minnesota, this court must next determine whether the explicit nexus requirements of Minn.Stat. § 543.19, Subd. 3, limits the court from asserting personal jurisdiction. Although there appears to be some Minnesota Supreme Court authority to the contrary, *see Rostad v. On–Deck*, 372 N.W.2d 717, 719 (Minn.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985); *Marquette National Bank v. Norris*, 270 N.W.2d 290, 291 (Minn.1978); *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 298, 240 N.W.2d 814, 819 (1976); *North-*

*western National Bank of St. Paul v. Kratt,* 303 Minn. 256, 261 226 N.W.2d 910, 914 (1975); *see also Larson v. G.D. Searle & Co.,* 683 F.Supp. 1277, 1279–80 (D.Minn. 1988) (discussing *Rostad, Norris, Hardrives,* and *Kratt* ), the Minnesota Court of Appeals along with a number of Minnesota District Court opinions have expressly held that the Minnesota long arm statute limits personal jurisdiction to matters arising out of the context establishing that jurisdiction. *See Curry v. McIntosh,* 389 N.W.2d 224, 227 (Minn.Ct.App.1986); *Hanson v. John Blue,* 389 N.W.2d 523, 527 (Minn.Ct.App. 1986); *Waite v. Waite,* 367 N.W.2d 679, 650 (Minn.Ct.App.1985); *Larson v. Assoc. of Apartment Owners of Lahaina Shores,* 606 F.Supp. 579, 583 (D.Minn.1985) (MacLaughlin, J.); *Collyard v. Washington Capitals,* 477 F.Supp. 1247, 1250 (D.Minn. 1979) (Lord, J.); *Tunnell v. Doelger & Kirsten,* 405 F.Supp. 1338, 1340 (D.Minn.1976) (Devitt, J.); *see also Larson,* 683 F.Supp. at 1280 (Renner, J.); *Goodman v. Copper Mountain Resort Assoc.,* No. 3–82–1461 (D.Minn.1983) (Magnuson, J.). After considering the briefs and arguments of counsel, and considering the relevant case law, the court finds itself in agreement with Judge Renner's thorough analysis and conclusion in *Larson.* Therefore, this court concludes "that the plain language of the [Minnesota long arm] statute embraces only the concept of specific jurisdiction," and therefore plaintiffs must show some nexus between the acts complained of and the defendant's business activities in the state. *Id.* at 1280–81 *see also Zhorne v. Swan,* 700 F.Supp. 1037, 1038 (D.Minn. 1988) (Devitt, J.) ("the Minnesota long arm statute clearly requires a nexus between the contact with the state and the cause of action asserted").

There is no question that the incident giving rise to this lawsuit has no relation to Empire Duluth's business activities in this state. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction plaintiffs' complaint as presently drafted must be granted.

D. *Plaintiffs' Motion to Amend*

Plaintiffs have requested an opportunity to amend their complaint to allege as an alternative basis for jurisdiction the court's powers under its original, admiralty jurisdiction. Based on the liberal treatment motions to amend are to be given under Rule 15 of the Federal Rules of Civil Procedure, the court grants plaintiffs' request. Defendant requests additional time in which to consider and move to dismiss this alleged alternative basis for jurisdiction. This request is also granted. The parties are instructed to submit to the court, upon stipulation if possible, an amended proposed pretrial order, incorporating these extensions.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss plaintiffs' complaint as currently pled for lack of personal jurisdiction is granted.

2. Plaintiffs' motion to amend its complaint is granted.