Thomas **BIELICKI** and Jacqueline Bielicki, his wife, Plaintiffs,

v.

**EMPIRE STEVEDORING COMPANY, LTD., Defendant.**

**Civ. No. 4–88–431.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 20, 1990.

---

Jerrold F. Bergfalk, David L. Sasseville, Lindquist & Vennum, Minneapolis, Minn., Harvey L. Anderson, Anderson Law Office, Philadelphia, Pa., for plaintiffs.

George W. Soule, Robert K. Miller, Bowman & Brooke, Minneapolis, Minn., Thomas E. Seus, Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and Minnesota Statute § 543.19 (1988). This is defendant's second motion before this court to dismiss for lack of personal jurisdiction.

Plaintiffs originally brought this action in Minnesota asserting diversity of citizenship jurisdiction. On July 9, 1990, 741 F.Supp. 758, this court issued an order granting defendant's motion to dismiss for lack of personal jurisdiction and permitting plaintiffs to amend their complaint to allege admiralty jurisdiction. On August 9, 1990, plaintiffs served an amended complaint asserting admiralty jurisdiction. Defendant contends that this new jurisdictional allegation does not cure the personal jurisdiction defects on which this court based its July 9, 1990, order.

For the reasons stated herein, the court will amend its July 9, 1990, order and will deny defendant's current motion to dismiss.

## FACTS

This case arises out of an accident that occurred aboard the ship, M/V MALAKAND, on or about May 24, 1985, while it was docked in Philadelphia, Pennsylvania. Plaintiff Thomas Bielicki was injured in that accident and subsequently initiated the tort action which underlies this motion. The facts relevant to this court's jurisdictional inquiry are set forth in this court's order dated July 9, 1990, at 2–4 and the court hereby incorporates those facts by reference.

## DISCUSSION OF LAW

### A. Personal Jurisdiction

In the July 9, 1990, order, this court undertook an analysis of the Minnesota State Long Arm Statute, Minn.Stat. § 543.19, as applied to the defendant and plaintiffs' cause of action in a Minnesota federal court. The court first examined whether defendant had sufficient contacts with Minnesota to allow the court to exercise jurisdiction over defendant. The initial step in this analysis required the court to examine the relationship between defendant and its wholly owned subsidiary located in Duluth ("Empire Duluth"). After thoroughly scrutinizing the relationship between defendant and Empire Duluth and reviewing the applicable law, the court concluded that Empire Duluth was a mere instrumentality of defendant. Accordingly, the court pierced the corporate veil separating defendant from Empire Duluth and held Empire Duluth's contacts with Minnesota to be defendant's contacts with Minnesota.

The court next concluded that Empire Duluth's contacts with Minnesota were sufficient to satisfy the due process requirements of the United States Constitution. Specifically, the court held that "[t]he quantity, nature and quality of defendant's contacts with Minnesota are sufficiently substantial to make it fair, reasonable and in accordance with due process to exercise personal jurisdiction over [defendant]." Order dated July 9, 1990, at 763. The court further held that "[a]ny inconvenience caused to defendant by this court's exercise of jurisdiction is outweighed by the fact that defendant, when establishing an instrumentality in Minnesota, purposely availed itself of the privilege of conducting business in the state and, as such, had

expectations to be haled into court here." *Id.* at 763 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant can reasonably anticipate out-of-state litigation if he purposely avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws)).

Taken this far, the court's analysis indicates that exercising jurisdiction over defendant would be both constitutional and reasonable. This conclusion was dealt a fatal blow, however, when the court proceeded to consider the specific provisions of the Minnesota Long Arm Statute, specifically subdivision 3. Minn.Stat. § 543.19, subd. 3, as interpreted by Minnesota courts, requires that there be a nexus between the defendant's contacts with the state and the plaintiffs' cause of action. After examining plaintiffs' cause of action relative to defendant's contacts with the state, the court concluded that the nexus requirement of subdivision 3 was not satisfied and consequently declined to exercise jurisdiction over the defendant. In its discussion of the nexus requirement of the Minnesota Long Arm Statute, this court concluded " 'that the plain language of the [Minnesota Long Arm] Statute embraces only the concept of specific jurisdiction,' and therefore plaintiffs must show some nexus between the acts complained of and the defendant's business activities in the state." Order dated July 9, 1990, 741 F.Supp. at 764 (citing *Larson v. G.D. Searle & Co.,* 683 F.Supp. 1277, 1280–81 (D.Minn.1988)). As a general statement about the Minnesota Long Arm Statute, this was correct. The court now recognizes, however, that it took its jurisdictional analysis one step too far in applying the Minnesota Long Arm Statute to this matter.

■ After reviewing the briefs and submissions of counsel with respect to the present motion to dismiss, the court reexamined the reasoning of its July 9, 1990, order and the briefs and submissions of counsel related thereto. After reviewing all of these materials, the court has con-

cluded that it erred in granting defendant's first motion to dismiss. Rather than dismissing plaintiffs' cause of action for lack of personal jurisdiction, the court should have exercised personal jurisdiction over defendant based on principles of "general jurisdiction." Under general jurisdiction, plaintiffs' claim need not arise directly out of defendant's contacts with the forum state, so long as defendant has engaged in "continuous and systematic business contacts" with that state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In *Helicopteros,* the United States Supreme Court had to decide whether the contacts of a foreign corporation with the State of Texas were sufficient to allow a Texas state court to assert jurisdiction over the corporation and a cause of action not arising out of or related to the corporation's activities within the state. *Id.* at 409, 104 S.Ct. at 1869. Defendant's contacts with Texas were participation in a negotiation discussion held in Houston; purchase of spare parts, accessories and approximately 80 percent of its fleet from a helicopter company located in Ft. Worth; and sending pilots, management and maintenance personnel to visit the Ft. Worth helicopter company to receiving training and participate in technical consultation. The defendant also received in its bank accounts located outside of Texas, $5,000,000 in payments drawn upon a Houston bank. *Id.* at 411, 104 S.Ct. at 1870. Beyond the foregoing, there were no other contacts between the defendant and the State of Texas. The defendant had never been authorized to do business in Texas and never had an agent to receive service of process within the state. Defendant had never performed helicopter operations in Texas or sold any product that reached Texas. The defendant had never solicited business in Texas, never signed any contract in Texas, never had an employee based there, and never recruited an employee in Texas. In addition the defendant never had owned real or personal property in Texas and never had maintained an office or establishment there. Defendant maintained no

records in Texas and had no shareholders there. *Id.* Wrongful-death actions were initiated in Texas state court against the defendant. The deaths at issue arose out of a helicopter accident which occurred outside of Texas. None of the decedents or their representatives were domiciled in Texas, but all of the decedents were hired in Houston to work on a pipeline project in Petro, Peru. *Id.* at 412, 104 S.Ct. at 1871.

In *Helicopteros*, the Court reiterated that "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activity in the forum state, due process is not offended by a state's subjecting the corporation to its *in personam* jurisdiction where there are sufficient contacts between the state and the foreign corporation. *Id.* at 414, 104 S.Ct. at 1872. (footnote omitted) (citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–780, 104 S.Ct. 1473, 1480–81, 79 L.Ed.2d 790 (1984)); *see also* 466 U.S. at 414 n.n. 8 & 9, 104 S.Ct. at 1872 n.n. 8 & 9 (addressing distinction between "specific jurisdiction" and "general jurisdiction"). Although the Court did not sanction the exercise of jurisdiction over the defendant in *Helicopteros*, it reaffirmed the notion of general jurisdiction and cited with authority the case of *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). As the *Helicopteros* court noted:

> In *Perkins*, the Court addressed a situation in which state courts had asserted general jurisdiction over a defendant foreign corporation. During the Japanese occupation of the Philippine Islands, the president and general manager of a Phil-ippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company. He kept company files and held directors' meetings in the office, carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with rehabilitation of the corporation's properties in the Philippines. In short, the foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business," and the exercise of general jurisdiction over the Philippine corporation by an Ohio court was "reasonable and just."

466 U.S. at 414–15, 104 S.Ct. at 1872 (citing 342 U.S. at 438, 445, 72 S.Ct. at 414, 418).

After re-examining the factual material presented in connection with defendant's first motion to dismiss, the court concludes that the present case is quite similar to *Perkins* and bears only a faint resemblance to the situation in *Helicopteros*.[1] *See* order dated July, 1990, at 2–4, 8–10 (discussing Empire Duluth's contacts with Minnesota). Consequently, the court will exercise jurisdiction over this matter notwithstanding the lack of a nexus between defendant's contacts with the state and plaintiffs' cause of action.

■ Defendant contends that even if it has sufficient contacts with Minnesota to satisfy due process, it has not received service of process such that this court can exercise jurisdiction over it. Plaintiffs have served defendant in Canada but have not served Empire Duluth.[2] Defendant maintains that because it has only been

---

1. In a letter dated December 17, 1990, defendant's counsel requested leave of court to file an additional legal memorandum addressing the distinction between "transacting business" and "doing business" in Minnesota. Defense counsel also suggested that resolution of this issue may require the submission of additional factual material. After reviewing the previously submitted factual material and examining the applicable law, the court has concluded that the submission of additional legal memoranda would be superfluous and additional factual material is unnecessary. Accordingly, defen-dants' request to submit an additional memorandum is denied.

2. Plaintiff attempted to serve Empire Duluth pursuant to Rule 4(d)(3) of the Federal Rules of Civil Procedure prior to this court's order July 9, 1990. Empire Duluth would not accept service of process, however, because it denied plaintiffs' jurisdictional allegations which would have allowed plaintiff to serve defendant through Empire Duluth.  .

served in Canada and has not been served in Minnesota, this court may not exercise jurisdiction over it. Plaintiffs respond that the court should not give credence to defendant's insufficiency of service defense because defendant delayed in raising the defense and plaintiffs have been prejudiced by that delay. Alternatively, plaintiffs ask the court to quash the Canadian service and allow plaintiffs to reserve defendant in Minnesota.

Because plaintiffs originally attempted to serve Empire Duluth and because defendant did not timely file a motion to dismiss for insufficiency of service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, the court will grant plaintiffs leave to serve Empire Duluth. The court's decision is supported by Minn. Stat. § 302A.901 which addresses service of process on a corporation. Plaintiffs may serve Empire Duluth pursuant to Minn. Stat. § 302A.901 and the completion of such service shall remedy any jurisdictional defects over the defendant.

### B. *Subject Matter Jurisdiction*

In its order dated July 9, 1990, the court granted plaintiffs leave to amend their complaint to allege an alternative basis for jurisdiction—the court's powers under its original, admiralty jurisdiction. As is indicated above, however, the court erred in its determination on plaintiffs' first motion to dismiss. Because plaintiffs' request to allege admiralty jurisdiction was made only in the event that the court granted defendant's motion to dismiss, the court should never have reached plaintiffs' request. A problem arises because plaintiffs have amended their complaint to allege admiralty jurisdiction. This is now incorrect. Because the court has now decided to deny defendant's first motion to dismiss, the basis of the court's subject matter jurisdiction is diversity of citizenship. Accordingly, plaintiffs should never have been granted leave to amend their complaint to allege admiralty jurisdiction. Accordingly, the court will exercise diversity of citizenship jurisdiction over this matter and plaintiffs' complaint shall be amended to delete the allegation of admiralty jurisdiction.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's second motion to dismiss for lack of personal jurisdiction which was argued on December 14, 1990, is denied;

2. This court's order dated July 9, 1990, shall be amended to reflect that defendant's first motion to dismiss for lack of personal jurisdiction is denied;

3. The court shall exercise diversity of citizenship subject matter jurisdiction over this matter and the plaintiffs' complaint shall be amended to delete the allegation of admiralty subject matter jurisdiction.