**Lisa Ann LARSON, Plaintiff,**

v.

**G.D. SEARLE & COMPANY, a Delaware corporation, Defendant.**

**Civ. No. 4–87–154.**

United States District Court, D. Minnesota, Fourth Division.

March 28, 1988.

Michael V. Ciresi, Roger P. Brosnahan, David L. Suggs, Roberta Walburn of Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiff.

Michael Berens, Madge S. Thorsen, Paula D. Osborn of Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for defendant.

### ORDER

RENNER, District Judge.

Before the Court is defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss plaintiff's complaint for lack of personal jurisdiction over defendant. In the alternative, defendant urges transfer of the case to the United States District Court in Iowa.

### BACKGROUND

Plaintiff Larson is an Iowa citizen residing in Iowa. Defendant Searle is a corporation existing in, and incorporated under, Delaware law. Searle's principal place of business is in the state of Illinois. For purposes of this motion, Searle does not deny that it transacts business in Minnesota, has committed acts within the state, and has "minimum contacts" with Minnesota.

Plaintiff's Complaint and affidavit allege the following facts: On April 12, 1978, Larson was inserted with a Cu–7 at a medical clinic in Dubuque, Iowa. On July 25, 1980, clinic doctors removed the Cu–7 in response to Larson's complaints of severe cramping, heavy bleeding and intermenstrual spotting.

Subsequently, between March 6, 1985 and October 4, 1985, Larson was treated by various Iowa physicians for infertility. When she failed to become pregnant after those efforts, she was referred to the in vitro fertilization program at the University of Minnesota Hospital in Minneapolis.

Larson came to Minnesota for an initial examination at the University Hospital on January 13, 1986. She immediately returned to Iowa. She returned to the hospital on February 7, 1986 and stayed in Minnesota until February 25, 1986. During this time, Drs. Nagel and Tagatz performed a laproscopy for ovum retrieval. Four eggs were retrieved, fertilized and transferred back into Larson's uterus. Following the procedures, she again returned to Iowa.

These efforts at impregnation also failed. She has had no further medical treatment in Minnesota. On August 19, 1987 she placed her name on the waiting list for participation in a newly opened in vitro fertilization program at the University of Iowa.

The Complaint does not plead a specific nexus between Searle's acts in Minnesota and plaintiff's cause of action. Instead, the Complaint states only that Searle promoted and sold the Cu–7 and other pharmaceutical products in Minnesota.

Defendant contends that Larson's case in this forum must be dismissed because her claims do not arise from Searle's transaction of business or commission of acts occurring in Minnesota. According to defendant, such a nexus between defendant's forum state actions and plaintiff's cause of action is required by the Minnesota long-arm statute. Minn.Stat. § 543.19, subds. 1(b) and 3.

Upon careful review, the Court concludes that regardless of whether subdivision 3

indeed limits the extraterritorial reach of the Minnesota long-arm statute somewhere short of the full extent authorized by due process, there is a sufficient nexus between defendant's forum contacts and plaintiff's cause of action to justify assertion of jurisdiction consistent with Minn.Stat. § 543.19, subds. 1(b) and 3.

Moreover, although this case is in many ways more closely connected to Iowa than Minnesota, the balance of interests in favor of transfer is not so strong as to override plaintiff's choice of forum. Accordingly, this Court will deny defendant's motion to dismiss, as well as defendant's motion to transfer.

## ANALYSIS

In order for this Court to exercise diversity jurisdiction, the Court must find not only that the exercise of personal jurisdiction, be it "specific" or "general," comports with due process, but also that service of process is authorized by the Minnesota long-arm statute. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Minnesota's long-arm statute authorizes personal jurisdiction over foreign corporations which transact business within this state. Minn.Stat. § 543.19, subd. 1(b) provides:

Personal jurisdiction over non-residents. Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation ... in the same manner as if it were a domestic corporation.... This section applies if, in person or through an agent, the foreign corporation ...:

(b) Transacts any business within the state.

The long-arm statute further requires, however, that

[o]nly causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in

which jurisdiction over him is based upon this section.

Minn.Stat. § 543.19, subd. 3. A literal reading and application of this nexus requirement would clearly defeat personal jurisdiction unless plaintiff establishes that her claims arise out of G.D. Searle's business activities in Minnesota.

1. *Must the "arising from" requirement of subdivision 3 be met in all cases?*

It is now well established that fundamental due process rights are not offended solely because a cause of action does not arise out of, or relate to, the foreign corporation's activities in the forum state. General jurisdiction is constitutionally appropriate provided that there are sufficient contacts between the state and the defendant corporation. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). One issue before the Court is whether the explicit nexus requirement of Minn.Stat. § 543.19, subd. 3 limits the reach of the Minnesota long-arm statute somewhere short of the maximum permitted by current due process principles.

No Minnesota Supreme Court case has held the subdivision 3 nexus requirement an absolute bar to personal jurisdiction where a defendant has otherwise substantial enough forum contacts to satisfy due process. In contrast, at least five Minnesota Supreme Court decisions suggest that the "arising from" language of subdivision 3 does not preclude the assertion of jurisdiction where defendant's contacts with this state, although unrelated to a plaintiff's cause of action, are nonetheless so significant as to make it fair and reasonable that defendant appear in the forum.

In *Franklin Mfg. Co. v. Union Pacific R. Co.*, 297 Minn. 181, 210 N.W.2d 227 (1973), a Minnesota corporation sued a foreign railroad company for damages resulting from the misrouting of a shipment of insulating materials which originated in Kansas. The defendant railroad had for an extended period of time maintained an office in Minnesota for the purpose of soliciting freight shipments for carriage on some part of its line. The defendant did not own transportation lines in the state, but did own railroad rolling stock which it authorized other companies to bring into Minnesota. The court stated:

> That plaintiff's asserted cause of action did not arise out of defendant's contacts with Minnesota is not unimportant. Were it otherwise, the issue would probably not have been raised. This nevertheless does not prevent this state from taking jurisdiction, provided the other factors weigh sufficiently in favor of it.

*Id.* at 184, 210 N.W.2d at 230.

Similarly, in *Northwestern National Bank of St. Paul v. Kratt*, 303 Minn. 256, 226 N.W.2d 910 (1975), the court held that an Illinois guarantor who had guaranteed a loan made by a Minnesota bank on property in Minnesota had transacted business within the state sufficient to satisfy Minn Stat. § 543.19, subds. 1(b) and 3, notwithstanding that his Minnesota business transactions did not, in the strictest sense, give rise to the cause of action based on the signing of the guarantee itself. The guarantor had discussed a mortgage over the phone with bank officials and attended meetings concerning the transaction in Minnesota. The court stated that "[defendant's] contention that his activities must give rise to this particular cause of action, based upon the signing of the guaranty itself, construes the statute more strictly than was intended by the legislature." 303 Minn. at 261, 226 N.W.2d at 914.

In *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 240 N.W.2d 814, (1976), the court held that "where contacts are substantial with respect both to quantity and quality, it is not essential to find that they are also related to the cause of action." *Id.* at 298, 240 N.W.2d at 819. The Court also concluded, however, that plaintiff's cause of action arose "at least in part out of defendant's contacts with the state." *Id.*

In *Marquette National Bank v. Norris*, 270 N.W.2d 290 (Minn.1978), the court went so far as to state that "where § 543.19, subd. 1(b) is concerned, the statutory and

constitutional requirements for exercise of personal jurisdiction are coextensive." *Id.* at 291.

Most recently, in *Rostad v. On–Deck,* 372 N.W.2d 717 (Minn.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985), the court held that Minnesota can exercise personal jurisdiction over a foreign corporation which sells products in Minnesota through distributors under a "stream of commerce" theory, even where the resident plaintiff could not show how the particular product arrived in the state. As in *Hardrives,* the *Rostad* court noted that the legislature intended the long arm statute to have the maximum extraterritorial effect allowed under due process. *Id.* at 719.

While these cases, collectively, counsel in favor of asserting jurisdiction, the Court is troubled that none declared the subdivision 3 nexus requirement superfluous or expressly endorsed the concept of general jurisdiction. The Texas Supreme Court did precisely this in the case underlying *Helicopteros,* 466 U.S. at 413 n. 7, 104 S.Ct. at 1871–72 n. 7.

Equally disturbing is the fact that when the Minnesota legislature revised section 543.19 in 1978, it chose to retain the subdivision 3 nexus requirement, notwithstanding that the legislature, by its amendments, apparently sought to expand the reach of the long-arm consistent with enlargement of the scope of due process.

In contrast to the Minnesota Supreme Court cases cited above, several recent Minnesota Court of Appeals decisions have relied upon the nexus requirement to decline personal jurisdiction. *Curry v. McIntosh,* 389 N.W.2d 224 (Minn.Ct.App.1986); *Hanson v. John Blue,* 389 N.W.2d 523 (Minn.Ct.App.1986); *Waite v. Waite,* 367 N.W.2d 679 (Minn.Ct.App.1985). Judges in this district have done the same. *Larson v. Assoc. of Apartment Owners of Lahaina Shores,* 606 F.Supp. 579 (D.Minn.1985); *Collyard v. Washington Capitals,* 477 F.Supp. 1247 (D.Minn.1979). These state and federal decisions are all to some degree

distinguishable; in each case, the court found not only a lack of a nexus but also a failure by plaintiff to establish minimum contacts. Such contacts are conceded by defendant in the instant case.

Even *Tunnell v. Doelger & Kirsten,* 405 F.Supp. 1338 (D.Minn.1976), which is unique among federal decisions in expressly relying on subdivision 3 alone to deny jurisdiction, is distinguishable because the case simply does not involve the level of contacts between the defendant and forum state at issue here.

The Eighth Circuit has not yet addressed the significance of the Minnesota statute's nexus requirement. However, in *Precision Construction Co. v. J.A. Slattery Co.,* 765 F.2d 114, 119 (8th Cir.1985), a case applying Missouri law, the Court noted in dicta that the nexus requirement is not only a primary consideration in evaluating due process but also is required by section 3 of the Missouri long-arm statute, R.S. Mo. § 506.500(3). Section 3 of the Missouri statute is identical to subdivision 3 of the Minnesota statute.[1]

In the final analysis, this Court, like several others before it, believes that the apparent disparity between the statute's nexus requirements and the extent of jurisdiction permissible with constitutional due process requirements is an unresolved question of state law. *Busch v. Mann,* 397 N.W.2d 391 (Minn.Ct.App.1986) (noting but not resolving the issue); *Medtronic v. Mine Safety Appliances,* 468 F.Supp. 1132, 1134 (D.Minn.1979) (noting the issue but avoiding decision by deciding that plaintiff's cause of action did, in fact, arise from defendant's actions in Minnesota).

If forced to decide the question, this Court would hold that the plain language of the statute embraces only the concept of specific jurisdiction. Until the statute is amended to specifically authorize jurisdiction to the limits of due process, or the Minnesota Supreme Court expressly endorses the concept of general jurisdiction,

---

1. Section 506.500(3) of the Missouri Statute provides: "Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

this Court would impose the nexus requirement in all cases.

On the facts of this case, however, such a pronouncement is unnecessary. As in *Medtronic*, this Court finds a sufficient nexus between defendant's forum state activities and plaintiff's cause of action to justify assertion of personal jurisdiction even if the subdivision 3 nexus must be expressly applied.

### 2. *Does Plaintiff's cause of action arise out of Searle's contact with the Minnesota forum?*

This Court must "employ a liberal construction in determining whether the cause of action has arisen from the transaction of business in Minnesota." *B & J Manufacturing Co. v. Solar Industries, Inc.*, 483 F.2d 594, 598 (8th Cir.1973), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974). This proposition is consistent with the repeated observation in Minnesota Supreme Court decisions that the long arm statute was intended to have the maximum extraterritorial effect allowed under due process. *See e.g. Rostad v. On–Deck*, 372 N.W.2d at 719; *Hunt v. Nevada State Bank*, 285 Minn. 77, 96, 172 N.W.2d 292, 304 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970); *Hardrives*, 307 Minn. at 296, 240 N.W.2d at 819.

There is no precise standard to be used in determining whether a cause of action has arisen from the transaction of business in Minnesota. *Medtronic*, 468 F.Supp. at 1144. For guidance, *Medtronic* cited an Illinois case interpreting that state's long arm-statute, which was the model for Minnesota's statute. *Koplin v. Thomsas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E. 2d 646 (1966). According to *Koplin*, the purpose of the nexus requirement

> is to insure that there is a close relationship between a nonresident defendant's jurisdictional activities and the cause of action against which he must defend. In the instant case, *the phrase 'arising from' requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the*

*defendant submitted to the jurisdiction of Illinois' courts.*

73 Ill.App.2d at 252–53, 219 N.E.2d at 651 (emphasis added) (citations omitted).

Plaintiff's complaint alleges only that defendant engaged in promotional and sales activities in Minnesota. Complaint, paragraph 4. While such forum state activity was concededly extensive, it has no relationship whatsoever with this Iowa plaintiff's cause of action. And, although plaintiff argues otherwise, the mere fact that many Minnesota women may have suffered injuries similar to plaintiff's by virtue of defendant's Minnesota sales and promotional activities does not alone provide a nexus between defendant's Minnesota sales and promotional activities and this plaintiff's cause of action.

The stronger argument in plaintiff's favor is that Searle also conducted clinical testing in Minnesota—testing which Larson contends was tortiously inadequate. According to plaintiff's memorandum, and exhibits and affidavits attached thereto, several Minnesota physicians inserted Cu-7's in their patients as part of Searle's clinical study. At least two physicians, Drs. Donald Freeman and Harden Olson allegedly expressed concern about the product. Indeed, Dr. Freeman allegedly was one of the first physicians to call to Searle's attention the fact that the Cu-7 string has a "memory," a tendency to assume its shape as originally packaged. This memory characteristic, if established at trial, could prove to be a significant product defect. Were the Cu-7 string, by virtue of its memory characteristic, to retract either completely or partially into the uterus, bacteria in the vagina and cervix attached to the string could be transported into the uterus thereby conceivably posing a risk of infection.

■ The participation of Minnesota physicians in clinical testing conducted at Searle's behest and for Searle's benefit is a tenuous connection, but sufficient to meet the nexus requirement and establish jurisdiction under Minnesota's long-arm statute. *See Hardrives*, 240 N.W.2d 814, 818–19 (Minn.1976).

In *Hardrives*, plaintiffs alleged breach of contract and tort claims relating to defendant's negligent construction of an airport in Wisconsin. The court found a nexus in that at least some of defendant's negligent inspections and supervision of plaintiff's work may have occurred at plaintiff's plant in Minnesota. Similarly, in the instant case, at least a portion of Searle's allegedly negligent testing occurred within Minnesota. As a result, plaintiff's claim, at least to some extent, "lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of [Minnesota's] courts." *Koplin*, 73 Ill.App.2d at 253, 219 N.E.2d at 651.

Assuming that Searle's activity within Minnesota is embraced within the wording of the long-arm statute, the Court is also obligated to examine whether asserting jurisdiction comports with due process. *Precision Construction Co. v. J.A. Slattery Co.*, 765 F.2d at 115. This question is easily resolved in the affirmative as defendant concedes the requisite minimum contacts with the state. Accordingly, this Court has personal jurisdiction over defendant Searle.

### 3. *Is transfer of this action appropriate under 28 U.S.C. § 1404(a)?*

Under 28 U.S.C. § 1404, the Court is empowered to transfer a case to another judicial district, so long as it might have been brought in that district and the transfer is justified in the interest of justice and for the convenience of the parties and witness[2].

This action could well have been brought in the District of Iowa, the district of plaintiff's residence. 28 U.S.C. § 1391(a). Although Minnesota has personal jurisdiction over defendant in this action, the case is in many ways more closely connected to Iowa. Plaintiff Larson is an Iowa resident. Plaintiff purchased her Cu–7 outside of Minnesota in the state of Iowa. She had her Cu–7 inserted and removed in Iowa by Iowa physicians who had no connection with the state of Minnesota. Plaintiff also underwent treatment by Iowa physicians for her infertility.

Notwithstanding these strong Iowa connections, the balance of interests in favor of transfer is not so strong as to override plaintiff's choice of forum, a choice courts prefer to honor. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

Plaintiff's choice of a Minnesota forum would not be given as great a weight if all relevant contacts were with another state. *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968); *Banks v. Marine Navigation Sulfur Carriers, Inc.*, 545 F.Supp. 39 (E.D.Pa.1982). *See also Bergquist v. Medtronic*, 379 N.W.2d 508 (Minn.1986) (applying forum nonconveniens doctrine). It was for this very reason that this Court recently transferred a New York plaintiff's Cu–7 case to the Southern District of New York. *Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271 (D.Minn.1988).

In *Hoppe*, this Court noted that

all of the lay and expert witnesses with knowledge of the facts surrounding Ms. Hoppe's use and removal of her Cu–7, any attendant medical complications and injury or damages she suffered are in New York. These lay and expert witnesses are well outside the hundred mile subpoena power of this Court.

At pg. 1276. This Court reasoned that the unavailability of compulsory attendance of these key witnesses presented a compelling reason to transfer the case.

 In the instant case, however, plaintiff had significant contacts with Minnesota. At least some of the treatment she was forced to endure as an alleged result of her Cu–7 use took place in Minnesota under the care of Minnesota doctors. It would appear that Minnesota Drs. Navel and Tagatz may offer significant testimony as to the nature of plaintiff's damages. Conceivably, Drs. Navel and Tagatz could be called

---

**2.** 28 U.S.C. § 1404(a) provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it might have been brought.

to testify as to additional issues such as causation.

Where important information must be sought from the jurisdictions of both the Iowa and Minnesota district courts, it is difficult to conclude that Iowa is the clearly more convenient district from which to obtain discovery and compel the attendance of critical fact witnesses. *See Irvin v. G.D. Searle & Company,* Civil NO. R–83–864 (D.Md.1983) (denying motion to transfer a Cu–7 claim brought by a North Carolina resident in Maryland).

Accordingly, based on the foregoing and a review of the entire file and record, IT IS HEREBY ORDERED that defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss for lack of personal jurisdiction be denied.

IT IS FURTHER ORDERED that defendant's motion to transfer the case to the United States District Court for the District of Iowa be denied.