**John LAMB, d/b/a Alpha Productions, Plaintiff,**

v.

**Michael STARKS, 3D TV Corp. and Does 1–50, Defendants.**

**No. C–95–1732–JLQ.**

United States District Court, N.D. California.

Dec. 5, 1996.

Burton C. Jacobson, Beverly Hills, CA, for Plaintiff.

I. Braun Degenshein, San Francisco, CA, for Michael Starks, 3D TV Corp Inc.

ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, Senior District Judge.

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment or in the alternative for Summary Adjudication of Claims, heard on October 15, 1996. Burton C. Jacobson appeared on behalf of Plaintiff; I. Braun Degenshein appeared for Defendants. Having reviewed the record, heard from counsel, and being fully advised in this matter, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment or Summary Adjudication of Claims is **DENIED IN PART AND GRANTED IN PART** for the following reasons.

Plaintiff brought this action alleging copyright infringement under the 1976 Copyright Act, 17 U.S.C. § 106, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), concerning a movie entitled "The Starlets" ("the movie") and a "trailer" used to advertise the movie. Plaintiff claims that Defendants have infringed upon its copyright of the movie by copying the un-copyrighted trailer, and have engaged in unfair competition in violation of the Lanham Act. Defendants claim that there is no infringement because (1) the trailer pre-existed the full-length movie and was not itself copyrighted; and (2) the copying of the trailer constituted

"fair use" under the 1976 Copyright Act. Defendants further contend that, in any event, Plaintiffs are not entitled to recover enhanced damages under the Copyright Act and have failed to state a claim under the Lanham Act.

## FACTUAL BACKGROUND

In approximately 1976, Plaintiff John Lamb produced a movie entitled "The Starlets". He registered a copyright of the movie in 1984. A trailer used to advertise the movie as a coming attraction in theaters was created by Plaintiff to promote the movie. The trailer itself was never copyrighted. The movie is over 75 minutes long and the trailer is 2 minutes 40 seconds in length, containing scenes from the movie, **inter alia.**

Defendant Michael Starks is the President of 3D TV Corp. 3D TV designed, manufactures and markets an electronic device that allows for the viewing of specially formatted "3–D" films for viewing on a regular television, operated by synchronizing electronically controlled eyeglasses to specially formatted "3–D" videotapes.

Defendants attempted unsuccessfully to obtain a license to use Plaintiff's copyrighted movie on two separate occasions. Defendants do not dispute that they then copied the trailer of the movie without permission of the Plaintiff, and specially formatted it to demonstrate their "3–D" system, along with other trailers on a compilation video tape. Defendants utilized an order form where a customer could order "3–D" video tapes to be used with their TVs and VCRs. The trailer video at issue here could be purchased for $50.00.

## DISCUSSION

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975). Traditional summary judgment analysis establishes that the moving party is entitled to judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the non-movant, there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56(c);

*Semegen v. Weidner,* 780 F.2d 727 (9th Cir. 1986). However, summary judgment is appropriate only where reasonable minds could not differ on the material facts at issue. *See v. Durang,* 711 F.2d 141 (9th Cir.1983). There is no "genuine issue for trial" where the record "as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### 1. Copyright Infringement

■ Defendants contend that because the trailer pre-existed the movie and was not itself copyrighted, there can be no infringement. The court disagrees. The full length movie from which the trailer is derived is copyrighted. Defendants have provided no evidence that the trailer was published before the movie was copyrighted.

The Copyright Act of 1976, 17 U.S.C. § 106 describes the exclusive rights in copyrighted works:

(1) to reproduce the copyrighted work in copies . . . ;

(2) to prepare **derivative works** based upon the copyrighted work; (emphasis added);

.    .    .    .    .

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, the pictorial, graphic, or sculptural works, **including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly;** (emphasis added)

.    .    .    .    .

It may be that Plaintiff actually prepared the trailer prior to preparing the movie. However, the trailer indisputedly displays individual images of the copyrighted movie.

Section 106(2) of the Copyright Act reserves for copyright holders the exclusive right to prepare derivative works. A "derivative work" is defined in § 101 as "a work based upon one or more preexisting works, such as a translation . . . or any other form in which a work may be recast, transformed, or adopted."

The trailer clearly is a derivative of the full-length copyrighted movie. The author of a copyrighted work holds a bundle of exclusive rights in the copyrighted work, among them the right to incorporate the work into derivative works. *Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). Section 501(a) of the Copyright Act provides that "[a]nyone who violates any of the exclusive rights provided by sections 106 though 118 ... is an infringer of the copyright."

In *Stewart,* the Court found that the 1976 Copyright Act requires consent by the author of a copyrighted work before a derivative work may be produced and explicitly requires that the copyright "will not be abrogated by incorporation of the work into another work." *Id.* at 235, 110 S.Ct. at 1767. Here, it is clear that Defendants did not have consent of the Plaintiff to copy the trailer and Plaintiff's work was incorporated into its video by the Defendants.

Defendants further contend that they only used a small portion of the full-length movie in the trailer. "However, even a small taking may sometimes be actionable." *Norse v. Henry Holt and Co.* 991 F.2d 563, 565 (9th Cir.1993). There are only two elements necessary for a copyright owner to make out a **prima facie** case of copyright infringement: (1) ownership of the copyright by the plaintiff; and (2) copying by the defendant. *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1151 (9th Cir.1986). It is undisputed here that Plaintiff owns a copyright on the movie and that Defendant copied the trailer containing portions of the movie. Therefore, Plaintiff has established a **prima facie** case of copyright infringement.

Defendant's reliance on *Twin Books v. Walt Disney,* 83 F.3d 1162, 1165 (9th Cir. 1996); and *American Vitagraph, Inc. v. Levy,* 659 F.2d 1023 (9th Cir.1981) is misplaced. Both cases deal with the 1909 Copyright Act and common-law copyright, not applicable here. "Under the Copyright Act of 1976, common law copyright is abolished." *American Vitagraph, supra,* at 1023, n. 1.

However, Defendants further claim that their use of the trailer constituted a "fair use" of the copyrighted material. The fair use doctrine confers a privilege on people other than the copyright owner "to use the copyrighted material in a reasonable manner, without his consent, notwithstanding the monopoly granted to the owner." *Marcus v. Rowley,* 695 F.2d 1171, 1174 (9th Cir.1983). Congress incorporated this common law doctrine into section 107 of the 1976 Copyright Act. Section 107 reads in pertinent part that "[n]otwithstanding the provisions of section 106, the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching ..., scholarship or research is not an infringement of copyright." 17 U.S.C. § 107. In addition, section 107 specifies four factors to consider in determining whether the use in a particular case is a fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(2) the nature of the copyrighted works;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. . . .

■ "Fair use is a mixed question of law and fact." *Sega Enterprises Ltd v. Accolade, Inc.,* 977 F.2d 1510, 1521 (9th Cir.1992). "If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the nonmoving party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." *Hustler Magazine, supra.*

■ There are no genuine disputed material facts in this case, making a finding as to whether Defendants use was a fair use as a matter of law appropriate. To begin with, it is clear that the trailer Defendant copied from Plaintiff was not used for criticism, comments, news reporting, teaching, scholarship, or research, but rather was sold for strictly commercial profit purposes.

It is true that the text of § 107 is not entirely dispositive. The Supreme Court has noted that the § 107 text "employs the terms 'including' and 'such as' in the preamble paragraph to indicate 'illustrative and not limitative' functions of the examples given, ... which thus provide only general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses." *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577, 114 S.Ct. 1164, 1170, 127 L.Ed.2d 500 (1994).

■ Therefore, courts must balance the statutory factors "to determine whether the public interest in the free flow of information outweighs the copyright holder's interest in exclusive control over the work." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir.1986). The doctrine of fair use is in essence "an equitable rule of reason." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985).

■ Plaintiff overstates his case by arguing that "it is abundantly clear that an infringer may not claim 'fair use' when the infringer uses the copyrighted material for commercial purposes." However, if a copied copyrighted work is used for a commercial or profit-making purpose, the use is presumptively unfair. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449–451, 104 S.Ct. 774, 792–793, 78 L.Ed.2d 574 (1984). Defendants have not presented facts sufficient to rebut that presumption.

■ Under the second nature of the copyrighted works factor, the scope of fair use is greater when informational, as opposed to more creative works are involved. *Marcus v. Rowley*, 695 F.2d 1171, 1176 (9th Cir.1983). "Copying a news broadcast may have a stronger claim to fair use than copying a motion picture." *Nimmer on Copyright* § 13.5. Because the use of the copied trailer in this case is undisputedly for commercial purposes only and involves a creative, as opposed to factual work, the first two factors weigh in favor of the Plaintiff.

At first blush, it appears that the third factor may weigh in favor of the Defendants, as it is undisputed that the trailer copied by the Defendants contains only a small portion of the copyrighted full-length movie. However, Defendants copied the entire trailer, a derivative of the copyrighted movie, swinging the balance of this factor in favor of the Plaintiff.

The only factor not clearly in Plaintiff's favor is the fourth and final factor, i.e. the effect on potential market or value of the copyrighted work. It appears that Plaintiff has not marketed the movie or the derivative trailer since 1985, and Plaintiff has not set forth any concrete plans to re-market them in the future.

Looking at the factors in their entirety, and viewing the evidence and inferences arising therefrom in the light most favorable to the Plaintiff, the court can not find that Defendants' use of the copied trailer was a "fair use" of Plaintiff's copyrighted work. Rather, the record could only lead a rational trier of fact to clearly find in favor of the Plaintiff on the copyright infringement claim.

It appears that judgment as a matter of law in favor of the Plaintiff on his copyright infringement claim may be appropriate. However, Plaintiff has not moved for summary judgment. Additionally, as noted *infra*, Plaintiff has made no showing of any damages incurred as a result of Defendants copying the copyrighted work. Nevertheless, it is very clear that Defendant's Motion for Summary Judgment as to the copyright infringement claim must be and is **DENIED**.

## LANHAM ACT

The Lanham Act, 15 U.S.C. § 1125, **et seq.** creates a cause of action for trademark infringement. Trademark policies are designed (1) to protect consumers from being misled ...; (2) to prevent an impairment of the value of the enterprise which owns the trademark; and (3) to achieve these ends in a manner consistent with the objectives of free competition. *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1529 (9th Cir.1992). 15 U.S.C. § 1125(a) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any com-

bination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

The Lanham Act explicitly condemns false designations or representations in connection with any goods or services. *Smith v. Montoro,* 648 F.2d 602, 605 (9th Cir.1981). In *Smith,* the court held that a plaintiff may state a Lanham Act violation when his name is replaced with another's in motion picture credits. The purpose of the Lanham Act is "to prevent individuals from misleading the public by placing their competitors' work forward as their own." *Shaw v. Lindheim,* 919 F.2d 1353, 1364 (9th Cir.1990).

■ Here, Plaintiff had a copyright on his fictional creation, which Defendant copied. However, this is not a trademark case. Furthermore, it is not disputed, that, despite the fact that Defendant copied Plaintiffs' trailer, the copy used in Defendant's video displayed all indicia of Lamb's authorship. There is no allegation that Starks attempted to mislead the public into thinking he authored the movie or the trailer. Therefore, Plaintiff has alleged no facts to establish a violation of the Lanham Act. No reasonable trier of fact could find in favor of the Plaintiff under the Lanham Act. Accordingly, Defendant's Motion for Summary Judgment as to the Lanham Act violation is **GRANTED.**

Because it is not disputed that the copyright on the movie was duly registered, Defendants' Motion concerning enhanced damages is **DENIED.** It appears that there are no disputed factual issues as to liability to be determined by a jury in this case. Therefore, in order to enable counsel and the court to consider a Motion for Summary Judgment by the Plaintiff, the pretrial conference currently set for January 18, 1997, and the jury trial currently set to commence on January 21, 1997, are **HEREBY STRICKEN.** This case is one which definitely should be resolved by the parties or through this District's excellent ADR program. However, in the event this case is not resolved by other means, **IT IS FURTHER ORDERED:**

1. Plaintiff shall serve and file its Motion for Summary Judgment on the copyright infringement claim including specific facts in support of its claimed damages, both actual and enhanced, including any support of a claim of willful infringement, on or before January 6, 1997, with a copy to the court at 73–710 Fred Waring Drive, No. 201, Palm Desert CA. 92260.

2. Defendants shall serve and file their response on or before January 13, 1997, with a copy to the court in Palm Desert.

3. Plaintiff shall serve and file its reply, if any, on or before January 20, 1997, with a copy to the court in Palm Desert, after which the court will review the briefs, and render a written ruling, without further oral argument.

4. If unresolved issues of fact remain, following resolution of Plaintiff's Motion for Summary Judgment, the court will set a new trial date.

**IT IS SO ORDERED.** The Clerk is directed to enter this Order and forward copies to counsel.