**JANEL RUSSELL DESIGNS, INC., Plaintiff,**

v.

**MENDELSON & ASSOCIATES, INC., Defendant.**

No. Civ. 99–1993(JRT/SRN).

United States District Court, D. Minnesota.

Sept. 25, 2000.

---

James Thomas Nikolai, Nikolai Merser-
eau & Dietz, Minneapolis, MN, for Janel
Russell Designs, Inc., plaintiff.

Allen W. Hinderaker, Duana J. Grage, Hinshaw & Culbertson, Minneapolis, MN, for Mendelson & Associates, Inc., defendant.

James Thomas Nikolai, Nikolai Mersereau & Dietz, Minneapolis, MN, for Janel Russell Designs, Inc., counter-defendant.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Janel Russell Designs, Inc. is the assignee of a copyright in a "Mother and Child" design that has been incorporated into various pieces of jewelry. Plaintiff brings a claim of copyright infringement against defendant Mendelson & Associates, Inc. for its sales of an allegedly infringing piece of jewelry. This matter is before the Court on defendant's motion to dismiss or transfer venue and plaintiff's motion for a preliminary injunction. For the reasons set forth below, defendant's motion is denied and plaintiff's motion is granted.

## FACTUAL BACKGROUND

In the fall of 1980, artist Janel Russell ("Russell") created a "Mother and Child" pendant. Russell obtained copyright registrations, numbered VAU 23–358 and VA 111–110, on this work in 1981 and 1982, respectively. Russell has since obtained copyrights on this work as incorporated into earrings and rings, and has also incorporated the work into lockets, bracelets, and necklaces.

In 1995, Russell incorporated plaintiff Janel Russell Designs, Inc., to handle her jewelry business, and transferred ownership of her copyrights to the corporation. Plaintiff is located in Minnesota. Both directly and through its licensees, plaintiff offers jewelry based on the "Mother and Child" design throughout the United States and in Canada, Europe, South Africa, Australia, and New Zealand. Between 1984 and 1999, Russell sold over a half million pieces incorporating the "Mother and Child" design, representing over $25 million in sales. Plaintiff's licensees advertise "Mother and Child" products in magazines and trade publications, and the products have also appeared in billboards, newspaper advertisements, and in numerous trade shows from 1982 to the present.

In 1984, Russell created a design similar to her "Mother and Child" pendant that incorporated the shape of a heart. The new design did not differ greatly from the original design; Russell simply altered the circular shape of the original piece into that of a heart. Russell applied for a copyright registration on this heart-shaped pendant in 1998. In her application, Russell identified her earlier registrations on the original "Mother and Child" piece as the work from which the heart-shaped piece is derived. After comparing the original and the heart-shaped design, the Copyright Office refused to issue a separate registration on the heart-shaped design. The Office explained in a letter to Russell's counsel that the addition of the heart did not constitute a sufficient amount of additional authorship. The letter went on to state as follows:

> If a work contains previously registered ... material, the copyright in the revised version covers only the additions or changes appearing for the first time. If a work contains only minor revisions or additions, or consists only of new material that is not protected by copyright, registration is not possible....
>
> The heart is a familiar shape, and adding the heart to the preexisting work does not contain the minimum amount of artistic authorship required to support an additional registration. The previous registrations should apply to the copyrightable content of this work.

Defendant is a California corporation with its principal place of business in California, and has been in the jewelry manufacturing business for nearly fifty years. In January 1998, defendant unveiled a mother and child heart-shaped pendant at a trade show. The pendant includes settings for birthstones in the center. While plaintiff alleges that defendant copied

plaintiff's design, defendant offers an alternative explanation for its design. Defendant avers that in 1997, it hired an artist to create a mother and child design based on Henry Moore's sculpture "Family Group." The artist met with several of defendant's officers and employees, including Ann Meyer, John Shinkawa, and Ernesto Martinez ("Martinez"). These individuals requested that the artist use the shape of the father's arms in the Moore sculpture as the basis for the piece. Although the artist provided a design, defendant rejected it as unacceptable and instead turned to Martinez, defendant's director of manufacturing, for a design. Martinez asserts that he based his design on the shape of the father's arms in the Moore sculpture. He further asserts that he did not know of plaintiff's piece and would never have seen it because he does not attend jewelry trade shows or read jewelry trade magazines. Although a copy of the registration does not appear in the record, plaintiff does not dispute that defendant obtained a copyright registration of this piece sometime in 1998 or 1999. At oral argument, defendant's counsel indicated that, to his knowledge, the Copyright Office did not compare defendant's piece to plaintiff's original "Mother and Child" design before issuing the registration.

The record reflects relatively few contacts between defendant and Minnesota. There were two sales of defendant's heart-shaped pendant in Minnesota in 1998 and four sales in 1999. Although the record does not explain how these sales in Minnesota came to occur, at oral argument defendant's counsel indicated that defendant uses manufacturer's representatives to market its products to retailers. The retailers place defendant's product on display in their stores, where customers may select and order desired pieces. Defendant then drop ships the pieces to the jewelry store. After conducting some investigation, Russell was able to identify ten stores in the Minneapolis/St. Paul area that offer defendant's pendant for sale as well as four additional stores elsewhere in Minnesota that display the pendant.

Plaintiff has been aggressive in protecting its copyrights; Russell estimates that she has taken steps to enforce her copyrights on eighty separate occasions, usually by sending a cease and desist letter through counsel to the allegedly offending manufacturer. In October 1999, one of plaintiff's customers informed it that the Bennett Brothers Gift Company of Chicago ("Bennett Brothers") was selling a heart-shaped pendant similar to plaintiff's. Plaintiff sent Bennett Brothers a cease and desist letter. In response, Bennett Brothers agreed to stop selling the piece and informed plaintiff of the identity of defendant, the manufacturer. Plaintiff then claims that it sent a cease and desist letter to defendant. Although defendant denies receiving such a letter, plaintiff has provided a copy of an initialed registered mail receipt addressed to defendant, although the initials are difficult to decipher. Plaintiff has also published an advertisement warning manufacturers not to "knock off" its "Mother and Child" piece. Pictures of both plaintiff's original piece and its heart-shaped piece appear in the advertisement, accompanied by pictures of allegedly infringing pieces manufactured by companies that have agreed to cease production and sale of the offending products. Copyright symbols appear next to the pictures of plaintiff's pieces; defendant's heart-shaped pendant is not pictured. Since the commencement of this lawsuit, plaintiff has also sent a cease and desist letter to Sterling, another retailer that sells defendant's jewelry; this letter has apparently not deterred Sterling from selling defendant's jewelry, including the heart-shaped pendant.

## ANALYSIS

### I. Defendant's Motion to Dismiss or Transfer Venue

■ Defendant moves to dismiss this action on the basis that the Court lacks personal jurisdiction over it. To survive a

motion to dismiss for lack of personal jurisdiction, plaintiff need only establish a prima facie case of personal jurisdiction. *See Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 612 (8th Cir.1994). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991). For the purposes of the prima facie showing, all facts must be viewed in a light most favorable to the nonmoving party and all factual conflicts must be resolved in that party's favor. *See Digi–Tel Holdings, Inc. v. Proteq Telecomms., Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996).

■ The analysis of personal jurisdiction requires two inquiries: first, a determination of whether the exercise of jurisdiction is proper under the forum state's long-arm statute, and second, a determination of whether the exercise of jurisdiction comports with due process. *See Dakota Indus.,* 946 F.2d at 1387–88. Minnesota's long-arm statute, Minn.Stat. § 543.19, extends jurisdiction to the fullest extent permitted by the federal Constitution. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir. 1991). The only question, therefore, is whether due process permits the exercise of personal jurisdiction over defendant in this case.[1]

■ To assert personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). To determine whether the defendant has such minimum contacts, courts look to three primary factors: 1) the nature and quality of the contacts with

the forum state; 2) the quantity of the contacts with the forum state; 3) the relation of the cause of action to the contacts. *See Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir. 1983). In addition to these considerations, courts also look to two secondary factors: 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties.

■ While defendant's contacts with Minnesota are relatively few, the Court finds that they are sufficient to support a prima facie showing of personal jurisdiction. To begin with, although defendant characterizes its sales in Minnesota as "random," "attenuated," and "fortuitous," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), defendant's counsel indicated at oral argument that defendant actually ships its products here in response to customer orders, *Cf. Dakota Indus.,* 946 F.2d at 1391 ("Our holding [finding jurisdiction] is further bolstered by the fact that there is at least some suggestion in the record that Sportswear directly shipped to South Dakota."). Thus, defendant's contacts with the forum do not appear to be solely the random result of actions of third parties over which defendant has no control. Instead, by shipping products here, defendant may fairly be said to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174.

In addition, plaintiff's claim of copyright infringement is directly related to defendant's contacts with the forum. Where a plaintiff's claims arise out of or are connected to a defendant's conduct in the forum state, the exercise of personal jurisdiction generally does not offend due process. *See Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1280 (8th Cir.1991).

---

1. Because this case arises under federal law, the Court examines due process under the Fifth Amendment rather than the Fourteenth Amendment. *See Dakota Indus.,* 946 F.2d at 1389 n. 2. The substantive analysis appears to be the same, however, regardless of which Amendment is applicable. *See id.*

Most importantly, because plaintiff alleges intentional copyright infringement[2] and is a resident of this forum, defendant has a closer relationship with the forum than a defendant charged with "mere untargeted negligence." *See Calder v. Jones,* 465 U.S. 783, 788–89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Dakota Indus.,* 946 F.2d at 1390–91. In *Calder,* the Supreme Court held that when a defendant directs intentional, tortious actions at a resident of the forum, the defendant may reasonably anticipate being haled into court in the forum to answer for its conduct. *See Calder,* 465 U.S. at 790, 104 S.Ct. 1482. The Eighth Circuit has applied the reasoning of *Calder* in the context of a trademark infringement claim. *See Dakota Indus.,* 946 F.2d at 1390. The Court believes that the analysis in *Calder* and *Dakota Industries* is equally applicable to this copyright infringement case. Plaintiff is a resident of the forum, and thus defendant could reasonably anticipate that the brunt of the injury would be felt here. Viewing the facts in the light most favorable to plaintiff, therefore, the Court finds that plaintiff has established a prima facie case of jurisdiction. Defendant's motion to dismiss for lack of personal jurisdiction is accordingly denied.

■ Defendant alternatively moves for a transfer of venue to California pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3] To prevail on such a motion, defendant must overcome the strong judicial preference for permitting plaintiff to choose its forum. *See Hoppe v. G.D. Searle & Co.,* 683 F.Supp. 1271, 1276 (D.Minn.1988). A motion to transfer should be granted only where the defendant makes a clear showing that the action should be transferred, and it must be denied if the effect of a transfer would merely be to shift the inconvenience from one party to the other. *See Norval Indus., Inc. v. Superior Cos.,* 515 F.Supp. 895, 899 (D.Minn.1981).

■ Under the foregoing standards, defendant's motion to transfer venue must be denied. The sole basis for defendant's motion is its assertion that it is a small company that can ill afford the burden of litigating in a distant state. Defendant has procured able local counsel, however, and its ability to participate in the litigation does not appear to have suffered thus far. While it is true that plaintiff sells its products throughout the United States and retains counsel both in this country and overseas, plaintiff provides uncontradicted evidence that all of its witnesses and documents are located in Minnesota. Thus, while it may be inconvenient for defendant to litigate in this forum, a transfer would simply shift that inconvenience to plaintiff. Such a shift is impermissible in light of the presumption in favor of a plaintiff's choice of forum.

Defendant argues that the presumption does not apply where the underlying facts did not occur in the chosen forum. *See Hoppe,* 683 F.Supp. at 1276. But defendant ignores that a number of the relevant facts and contacts occurred in this forum: Russell lives here and created her "Mother and Child" work here; plaintiff is located

---

**2.** As discussed below, whether defendant intentionally copied plaintiff's design is a disputed factual issue. For the purposes of establishing a prima facie case of personal jurisdiction, however, plaintiff has provided sufficient evidence of intent. Moreover, plaintiff has provided evidence that it sent a cease and desist letter to defendant; although this evidence is disputed, it also bolsters plaintiff's allegations of intentional infringement. *See Dakota Indus.,* 946 F.2d at 1391.

**3.** Plaintiff contends that the Court should not consider the merits of defendant's motion to transfer venue because it was not brought prior to defendant's answer. The case plaintiff cites for this rule, however, actually states the opposite: that such a motion may be brought either before or after the answer is filed. *See Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 386 (5th Cir.1983).

here and suffered its alleged damages here; and defendant sold some of its allegedly infringing products here. In contrast, the plaintiff in *Hoppe* was a resident of New York, the forum to which the defendant sought to transfer the action, and had purchased the allegedly defective product in New York as well. *See Hoppe*, 683 F.Supp. at 1276. The Court thus finds that defendant has failed to sustain its burden of making a clear showing that the action should be transferred, and this motion is accordingly denied.

## II. Plaintiff's Motion for a Preliminary Injunction

### A. Standard of Review

■ Plaintiff seeks to enjoin defendant from producing, importing, and distributing works based on plaintiff's copyrighted design. In determining whether to grant a motion for a preliminary injunction, the Court applies the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." 640 F.2d 109, 113 (8th Cir. 1981).

### B. Irreparable Injury, the Balance of Harms, and the Public Interest

■ While no one of the *Dataphase* factors is determinative, in a copyright infringement case the likelihood of success on the merits is predominant. *See E.F. Johnson Co. v. Uniden Corp.*, 623 F.Supp. 1485, 1491 (D.Minn.1985). Once the moving party has established a likelihood of success on the merits, irreparable injury is presumed. *See West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir.1986). In this case, the presumption is further bolstered by the fact that the success of plaintiff's business is evidently closely tied to the success of its "Mother and Child" products, and the harm to the

value of plaintiff's copyrights through infringement is therefore quite significant.

The balance of hardships between the movant and the other party is not generally regarded as significant. *See E.F. Johnson*, 623 F.Supp. at 1491. Nonetheless, the Court notes that the record demonstrates that defendant sells many products other than its heart-shaped pendant, and while an injunction would certainly result in some lost sales, there appears to be no threat to defendant's existence as a going concern; defendant has been in the jewelry business for nearly fifty years and only recently began selling the heart-shaped pendant.

■ Finally, the public interest is always served by upholding copyrights and thereby encouraging individual effort and creativity. *See id.* Because all these factors weigh strongly in favor of an injunction should plaintiff establish a likelihood of success on the merits of its copyright claim, the Court turns to a consideration of the merits of that claim.

### C. Likelihood of Success on the Merits

■ In order to establish copyright infringement, a claimant must demonstrate both ownership of the copyright, and copying by the defendant. *See Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941 (8th Cir.1992). To maintain an action for copyright infringement, plaintiff must have registered its copyright. *See* 17 U.S.C. § 411(a). Plaintiff has produced a certificate of copyright registration for the "Mother and Child" work, and has provided unrebutted evidence that this copyright was assigned to it. Plaintiff is therefore entitled to a rebuttable presumption that the copyright is valid. *See* 17 U.S.C. § 410(c).

■ Defendant argues that plaintiff's heart-shaped pendant does not meet the legal definition of a "derivative" work because the Copyright Office found that the addition of the heart was not suffi-

ciently original to support a separate copyright. Therefore, according to defendant, plaintiff lacks any copyright interest in its heart-shaped pendant. Whether or not plaintiff's heart-shaped piece may correctly be termed "derivative" as that term is defined in the Copyright Act, however, it cannot be disputed that plaintiff's heart-shaped pendant is based on plaintiff's original, copyrighted piece; indeed, the lack of sufficient difference between these pieces is what caused the Copyright Office to refuse an additional registration. In this regard, it is important to note that an additional registration would merely have protected the modifications to the preexisting work; the elements incorporated from the original design continue to be protected by the original copyright. *See* 17 U.S.C. § 103(b). Therefore, the Copyright Office's finding that plaintiff's heart-shaped pendant was insufficiently original to support an additional registration supports, rather than undermines, plaintiff's claim of a protected, registered copyright interest in the heart-shaped pendant. Moreover, it is a well-recognized principle that the copying of an unregistered derivative work can give rise to liability based upon the copyright ownership in the original work from which it is derived. *See Montgomery v. Noga,* 49 U.S.P.Q.2d 1961, 1967–69, 1999 WL 1797343 (11th Cir.1999); *Gamma Audio & Video, Inc. v. Ean–Chea,* 11 F.3d 1106, 1111–1112 (1st Cir.1993); *Russell v. Price,* 612 F.2d 1123, 1128–29 (9th Cir.1979); *Lamb v. Starks,* 949 F.Supp. 753, 755–56 (N.D.Cal.1996); *Cordon Art B.V. v. Walker,* No. CIV. 95–0863, 1996 WL 672969, at *5 (S.D.Cal. Aug.19, 1996). In *Montgomery,* the Eleventh Circuit noted explicitly that its analysis would be the same even if the unregistered work did not possess sufficient originality to be characterized as a derivative work. *See Montgomery,* 49 U.S.P.Q.2d at 1968 n. 15. Accordingly, the Court concludes that plaintiff has a registered copyright interest in its heart-shaped pendant.

 In the absence of direct evidence of copying, plaintiff may establish copying by demonstrating defendant's access to its work and substantial similarity between its work and defendant's work. *See Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 120 (8th Cir.1987). To establish access, plaintiff must show that defendant had a "reasonable possibility" of viewing its work. *See Moore,* 972 F.2d at 942. Plaintiff has adduced evidence that products based on its "Mother and Child" design are widely distributed and advertised, and have generated substantial revenue. Evidence that a work has been widely disseminated to the public is sufficient to establish a reasonable possibility of access. *See Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir.1984); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 998 (2d Cir.1983). While Martinez, the creator of the allegedly infringing piece, asserts that he does not read trade magazines or attend trade shows, it is undisputed that other officers and employees of defendant who do not make similar claims discussed the design of the piece with Martinez. Moreover, given the evidence of the wide distribution and popularity of plaintiff's "Mother and Child" products, trade magazines and trade shows are not the only route through which Martinez could have viewed plaintiff's work. While the question whether defendant independently created the work is certainly a disputed issue of fact, the Court finds that plaintiff has produced sufficient evidence of access to establish a likelihood of success on this element of its claim.

 Plaintiff next must show a substantial similarity between its work and defendant's work. Determination of substantial similarity involves a two-step process. *See Hartman,* 833 F.2d at 120. First, similarity of ideas is analyzed extrinsically, with a focus on the objective similarities in the details of the works. *See id.* The extrinsic test depends on such objective criteria as the type of artwork involved, the materials used, the subject matter, and the setting for the subject. *See Nelson v. PRN Prods., Inc.,* 873 F.2d 1141, 1143 (8th Cir.1989). Second, similar-

ity of expression is analyzed using an intrinsic test that depends on the response of the ordinary, reasonable person to the forms of expression. *See Hartman,* 833 F.2d at 120.

■ The Court has earlier concluded that plaintiff has a registered interest in its heart-shaped pendant insofar as the piece incorporates copyrighted content from the original, registered piece. Accordingly, although the Court believes it would be justified in comparing defendant's piece to plaintiff's heart-shaped work under *Montgomery* and the other authorities cited above, the Court will simplify the analysis by comparing defendant's piece directly with plaintiff's original work. Under the first step of the test, the Court finds that the works have numerous objective criteria in common. They are both pendants made out of gold or with gold plating. Both pieces represent a mother gazing at and embracing her child, with the mother on the left and the child on the right. The heads on both pieces are oval-shaped and slightly inclined toward each other, with the larger head on the left and the smaller on the right. While the inclination and shape of the heads differs slightly, these differences are not material.

Similarly, under the second step of the test, the Court finds that plaintiff has established a likelihood of success in demonstrating a substantial similarity of expression. Neither piece attempts to depict the actual appearance of a human being, but instead the figures in each are highly stylized and abstract representations lacking any recognizable facial or other features. In contrast to nearly all the other examples of this type of jewelry that defendant submitted, there is no adornment on the figures to denote, for example, that one of them is female, or that the other is a child. Instead, the unbroken connection between the figures conveys the bond between mother and child, thus leading the viewer to understand and assign identities to the figures.

The most noticeable difference between the two pieces, in fact, is the inclusion of the heart shape in defendant's work. In this regard, the Court notes that the Copyright Office's position that the familiarity of the heart shape renders its addition to plaintiff's piece insufficiently original is highly persuasive evidence that the heart in defendant's piece does not render it dissimilar to plaintiff's original design. *See also* 37 C.F.R. § 202.1(a) (stating that "familiar symbols or designs" are not subject to copyright). Although defendant's heart is rendered slightly asymmetrical in order to evoke the image of an embrace, the shape is still easily recognizable as a heart. Defendant argues that the heart in its piece renders it dissimilar because plaintiff's original piece, by contrast, is meant to suggest the image of a womb. The Court does not wish to delve into the realm of art criticism; however, the Court believes that it is quite apparent that whatever else plaintiff's original piece represents, the circular shape is clearly intended to depict an embrace. The heart in defendant's work is similarly intended to portray an embrace. Given the substantial similarities between the works, and the fact that the only real difference is defendant's addition of a heart, which in plaintiff's case the Copyright Office found insufficiently original to warrant a new registration, the Court concludes that plaintiff has established a substantial similarity between its copyrighted work and defendant's work.

■ Defendant argues that even if its work is substantially similar to plaintiff's, it cannot be held liable for infringement under the doctrine of merger. The merger doctrine is closely related to the canon of copyright law that ideas are not copyrightable. *See* 17 U.S.C. § 102(b); *Toro Co. v. R & R Prods. Co.,* 787 F.2d 1208, 1212 (8th Cir.1986). Under the merger doctrine, copyright protection is denied to some expressions of ideas if the idea behind the expression is such that it can be expressed in only a very limited number of ways. *See id.* Defendant contends that the idea of a loving embrace between a

mother and child can only be expressed in a limited number of ways. The Court need not belabor this issue; suffice it to say that the Court does not share defendant's crabbed view of the creativity of the world's artists when it comes to this most universal of themes.

■ Defendant's final argument is that plaintiff's infringement claim should be barred on the equitable ground of copyright misuse. *See Practice Management Info. Corp. v. American Med. Ass'n*, 121 F.3d 516, 520–21 (1997), *amended by* 133 F.3d 1140 (9th Cir.1998); *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 976–79 (4th Cir.1990); *M. Witmark & Sons v. Jensen*, 80 F.Supp. 843, 850 (D.Minn.1948). Under that doctrine, courts may refuse to aid a copyright holder in using his copyright in a manner violative of the public policy embodied in the grant of a copyright. *See Lasercomb America, Inc.*, 911 F.2d at 978. Defendant claims that plaintiff is misusing its copyright by labeling pictures of its heart-shaped pendant with a copyright symbol and through its aggressive pursuit of manufacturers of products that appear similar to the heart-shaped pendant.

■ The assumption underlying defendant's misuse argument is that plaintiff has no protectible interest in its heart-shaped pendant, and that plaintiff's efforts to protect it are therefore misuse. As discussed previously, however, the registered copyright on plaintiff's original design extends to the elements of that work that were incorporated into the heart-shaped pendant. Defendant has cited no law for the proposition that it is improper to affix a copyright symbol to a work that contains both copyrighted and noncopyrightable elements. The Copyright Office has opined that it is perfectly acceptable to affix a copyright notice to a derivative work for both the original material and the new material. *See* United States Copyright Office, Circular 14, Copyright Registration for Derivative Works at 2 (1999). Similarly, plaintiff's inability to obtain copyright protection for the additional material in its heart-shaped work should not preclude it from denoting the copyright protection that adheres to the original elements in the heart-shaped work, or from seeking to protect the copyrighted material in both the original and the heart-shaped works. In contrast to plaintiff's conduct, the cases defendant cites regarding misuse of copyright all involve plaintiff's who attempt to enlarge their monopoly by attaching conditions to the use of their copyrighted material. *See Practice Management*, 121 F.3d at 520; *Lasercomb America, Inc.*, 911 F.2d at 979; *M. Witmark & Sons*, 80 F.Supp. at 848–49. Here, plaintiff is simply seeking to protect its copyright through aggressive monitoring and cease and desist letters. The Court therefore rejects defendant's claim of misuse of copyright.

### D. Bond

■ The final issue for the Court's determination is the amount of the bond. Plaintiff contends that $500 is sufficient; defendant contends that $375,000 is necessary to protect it from an improvidently issued injunction. Defendant arrives at its figure by assuming that its year 2000 sales of its heart-shaped pendant would be $75,000 in the absence of an injunction, and also assumes that an injunction could cause at least 10% of retailers to stop selling all of its products. Defendant provides no evidence to support this latter assumption and the Court finds it to be sheer speculation. In 1999, defendant's sales of its heart-shaped pendant were approximately $58,000. Accordingly, the Court finds that a bond in the amount of $50,000 is sufficient.

### ORDER

Based on the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss or transfer venue [Docket No. 22] is **DENIED;**

2. Plaintiff's motion for preliminary injunction [Docket No. 14] is **GRANTED;**

3. In connection with plaintiff's copyright infringement claim, defendant Mendelson & Associates, Inc., and any and all of its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order, are hereby **ENJOINED and RESTRAINED** pending a final disposition of this matter as follows:

 a. The enjoined parties shall not produce within, distribute within, or import into the United States, its possessions and territories, products incorporating the "Mother and Child" work of Janel Russell protected by plaintiff Janel Russell Design, Inc.'s assigned copyrights registered as copyright numbers VAU 23–358 and VA 111–110 or any derivative thereof including, but not limited to, earrings and pendants;

 b. The enjoined parties shall not prepare derivative works based upon the "Mother and Child" work of Janel Russell protected by plaintiff Janel Russell Design, Inc.'s assigned copyrights registered as copyright numbers VAU 23–358 and VA 111–110 within the United States, its possessions and territories.

4. The injunction set forth in this Order shall take effect immediately upon the posting of security with the Clerk of Court in the amount of $50,000 pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.